# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### STATESBORO DIVISION

KEVIN DARNELL BRUMFIELD,

      Plaintiff,

   v.

ROBERT TOOLE; TRAVONZA BOBBIT;
MILTON SMITH; BRIAN CHAMBERS; and
MCCRAY MARYIN,

      Defendants.

CIVIL ACTION NO.: 6:16-cv-1

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently incarcerated at Georgia State Prison in Reidsville, Georgia, filed a cause of action pursuant to 42 U.S.C. § 1983 contesting certain conditions of his confinement. The Court has conducted the requisite frivolity review of Plaintiff's Complaint pursuant to 28 U.S.C. § 1915A. For the reasons that follow, I **RECOMMEND** that the Court **DISMISS** Plaintiff's official capacity, supervisory liability, and Eighth Amendment claims. I further **RECOMMEND** that the Court **DENY** Plaintiff's request for injunctive relief.

However, Plaintiff has stated viable claims against Defendants Bobbit and Smith under the First Amendment and those claims shall proceed. Consequently, the Court hereby **ORDERS** that the Complaint and this Order be served on Defendants Bobbit and Smith. The Court provides additional instructions to Plaintiff and Defendants pertaining to the future litigation of this action, which the parties are urged to read and follow.

# BACKGROUND[1]

Plaintiff asserts he was attacked and stabbed by inmates who had escaped from their cells on November 14, 2014, while working as an orderly in the G-3 building at Georgia State Prison. (Doc. 1, p. 5.) Plaintiff contends that the inmates were able to access the area where he was working because Defendants failed to properly lock the inmates' cells or secure the area surrounding the cells. Plaintiff contends he then received inadequate medical treatment for his stab wounds. (Id. at p. 6.) Plaintiff asserts only "two (2) of [his] wounds [were] attended to" and that he "needed stitches but only received some medical glue." (Id. at p. 5.) Plaintiff alleges that he was then unjustly punished for his "unauthorized" presence in the G-3 area of building G, as Plaintiff was assigned to work in only the G-2 area.[2] (Id.) As a result, Plaintiff was placed in the tier program, which limited the amount of time allowed outside his cell. (Id.)

Plaintiff then filed a grievance regarding the attack and avers that Defendants Bobbit and Smith retaliated against him for filing that grievance by taking his personal property and moving him to the Tier II administrative segregation unit. (Id.) Plaintiff filed an additional grievance regarding Defendants Bobbit's and Smith's retaliatory actions, for which Plaintiff alleges he suffered further retaliation. (Id. at p. 6.)

Plaintiff contends that, as a result of the attack and Defendants' continued failure to secure inmates' cells, he suffers from Post-Traumatic Stress Disorder and lives in constant fear of a future attack. (Id.) Plaintiff requests $800,000 in compensatory damages for his physical and emotional damages. (Id. at p. 7.) He also requests that the Court grant him injunctive relief

---

[1] The below recited facts are taken from Plaintiff's Complaint, (doc. 1), and are accepted as true, as they must be at this stage.

[2] Plaintiff alleges that he was given permission to enter the G-3 area by Office Chris Kavel, he had a signed pass authorizing his presence in the area, and his presence was recorded in a log book. (Doc. 1, p. 5.)

and order that he be transferred to a safer facility where he can receive mental health treatment. (Id.)

## STANDARD OF REVIEW

Plaintiff seeks to bring this action *in forma pauperis* under 42 U.S.C. § 1983. Under 28 U.S.C. § 1915(a)(1), the Court may authorize the filing of a civil lawsuit without the prepayment of fees if the plaintiff submits an affidavit that includes a statement of all of his assets and shows an inability to pay the filing fee and also includes a statement of the nature of the action which shows that he is entitled to redress. Even if the plaintiff proves indigence, the Court must dismiss the action if it is frivolous or malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii). Additionally, pursuant to 28 U.S.C. § 1915A, the Court must review a complaint in which a prisoner seeks redress from a governmental entity. Upon such screening, the Court must dismiss a complaint, or any portion thereof, that is frivolous or malicious, or fails to state a claim upon which relief may be granted or which seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

When reviewing a Complaint on an application to proceed *in forma pauperis*, the Court is guided by the instructions for pleading contained in the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 8 ("A pleading that states a claim for relief must contain [among other things] . . . a short and plain statement of the claim showing that the pleader is entitled to relief."); Fed. R. Civ. P. 10 (requiring that claims be set forth in numbered paragraphs, each limited to a single set of circumstances). Further, a claim is frivolous under Section 1915(e)(2)(B)(i) "if it is 'without arguable merit either in law or fact.'" Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)).

Whether a complaint fails to state a claim under Section 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Thompson v. Rundle, 393 F. App'x 675, 678 (11th Cir. 2010). Under that standard, this Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice. Twombly, 550 U.S. at 555. Section 1915 also "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Bilal, 251 F.3d at 1349 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

In its analysis, the Court will abide by the long-standing principle that the pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys and, therefore, must be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972); Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) ("Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys.") (emphasis omitted) (quoting Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003)). However, Plaintiff's unrepresented status will not excuse mistakes regarding procedural rules. McNeil v. United States, 508 U.S. 106, 113 (1993) ("We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

**DISCUSSION**

**I.     Dismissal of Claims for Monetary Damages Against Defendants in Their Official**

     **Capacities**

It is not clear if Plaintiff intends to sue Defendants in their individual and official capacities.  However, Plaintiff cannot sustain a Section 1983 claim for monetary damages against Defendants in their official capacities.  States are immune from private suits pursuant to the Eleventh Amendment and traditional principles of state sovereignty.  Alden v. Maine, 527 U.S. 706, 712–13 (1999).  Section 1983 does not abrogate the well-established immunities of a state from suit without its consent.  Will v. Mich. Dep't of State Police, 491 U.S. 58, 67 (1989).  Because a lawsuit against a state officer in his official capacity is "no different from a suit against the [s]tate itself," such a defendant is immune from suit under Section 1983.  Id. at 71.  Here, the State of Georgia would be the real party in interest in a suit against Defendants in their official capacities as officers at a state penal institution.  Accordingly, the Eleventh Amendment immunizes these actors from suit for monetary damages in their official capacities.  See Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989).  Absent a waiver of that immunity, Plaintiff cannot sustain any constitutional claims for monetary damages against Defendants in their official capacities.  Therefore, his Section 1983 claims for monetary relief against Defendants in their official capacities should be **DISMISSED**.

**II.     Supervisory Liability Claims against Defendants Toole and Chambers**

Section 1983 liability must be based on something more than a defendant's supervisory position or a theory of respondeat superior.  Bryant v. Jones, 575 F.3d 1281, 1299 (11th Cir. 2009); Braddy v. Fla. Dep't of Labor & Emp't Sec., 133 F.3d 797, 801 (11th Cir. 1998).  A supervisor may be liable only through personal participation in the alleged constitutional

violation or when there is a causal connection between the supervisor's conduct and the alleged violations. Id. at 802. "To state a claim against a supervisory defendant, the plaintiff must allege (1) the supervisor's personal involvement in the violation of his constitutional rights, (2) the existence of a custom or policy that resulted in deliberate indifference to the plaintiff's constitutional rights, (3) facts supporting an inference that the supervisor directed the unlawful action or knowingly failed to prevent it, or (4) a history of widespread abuse that put the supervisor on notice of an alleged deprivation that he then failed to correct." Barr v. Gee, 437 F. App'x 865, 875 (11th Cir. 2011).

It appears Plaintiff wishes to hold Defendants Toole and Chambers liable based solely on their supervisory positions at the prison. He does not make any factual allegations that these individuals directly participated in or were otherwise causally connected to the alleged deprivations of his constitutional rights. For example, he states that Defendant Toole has a duty to "oversee the entire prison and make sure everything is running" properly. (Doc. 1, p. 6.) He states that Defendant Chambers has a duty to "make sure the officers are doing what they are suppose[d] to be doing." (Id.) As set forth above, such supervisory allegations are an insufficient basis for Section 1983 liability. Therefore, the Court should **DISMISS** all claims against Defendants Toole and Chambers.

## III.    Eighth Amendment Claims

### A.    Assignment to Administrative Confinement

The cruel and unusual punishment standard of the Eighth Amendment requires prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care." Farmer v. Brennan, 511 U.S. 825, 832 (1994). Generally speaking, however, "prison conditions rise to the level of an Eighth Amendment violation only when they involve the wanton and

unnecessary infliction of pain." Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004) (quotations omitted). Thus, not all deficiencies and inadequacies in prison conditions amount to a violation of a prisoner's constitutional rights. Rhodes v. Chapman, 452 U.S. 337, 349 (1981). The Constitution does not mandate comfortable prisons. Id. Prison conditions violate the Eighth Amendment only when the prisoner is deprived of "the minimal civilized measure of life's necessities." Id. at 347.

Even accepting Plaintiff's assertions that he was arbitrarily placed in administrative confinement because he had permission to be in the G-3 area and presented Defendants with documents confirming his authorized presence, he fails to plausibly state an Eighth Amendment claim. The conditions imposed in "administrative segregation and solitary confinement do not, in and of themselves, constitute cruel and unusual punishment." Sheley v. Dugger, 833 F.2d 1420, 1428–29 (11th Cir. 1987); see also, Gholston v. Humphrey, No. 5:12–CV–97–MTT–MSH, 2014 WL 4976248, at *3 (M.D. Ga. Oct. 3, 2014) (dismissing prisoner's claims that his transfer to SMU with more restrictive conditions without a "legitimate penological justification" amounts to an Eighth Amendment violation); Anthony v. Brown, No. CV 113–058, 2013 WL 3778360, at *2 (S.D. Ga. July 17, 2013) (dismissing on frivolity review Eighth Amendment claims based on conditions of confinement in crisis stabilization unit). As detailed above, an Eighth Amendment violation requires the prisoner to allege that he is deprived of "the minimal civilized measure of life's necessities." Rhodes, 452 U.S. at 349. Plaintiff does not plausibly allege that the conditions of his confinement in administrative segregation fall below this standard. . Accordingly, the Court should **DISMISS** Plaintiff's Eighth Amendment claims based upon his placement in administrative confinement.

**B.      Deliberate Indifference Claim Based on Failure to Protect**

The Eighth Amendment's proscription against cruel and unusual punishment imposes a constitutional duty upon prison officials to take reasonable measures to guarantee the safety of prison inmates.  "'To show a violation of [his] Eighth Amendment rights, [a p]laintiff must produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation.'"  Smith v. Reg'l Dir. of Fla. Dep't of Corr., 368 F. App'x 9, 14 (11th Cir. 2010) (quoting Purcell ex rel. Estate of Morgan v. Toombs Cty., 400 F.3d 1313, 1319 (11th Cir. 2005)).  "To be deliberately indifferent a prison official must know of and disregard 'an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"  Id. (quoting Purcell, 400 F.3d at 1319–20).

Whether a substantial risk of serious harm exists so that the Eighth Amendment might be violated involves a legal rule that takes form through its application to facts.  However, "simple negligence is not actionable under § 1983, and a plaintiff must allege a conscious or callous indifference to a prisoner's rights."  Smith, 368 F. App'x at 14.  In other words, "to find deliberate indifference on the part of a prison official, a plaintiff inmate must show: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence."  Thomas v. Bryant, 614 F.3d 1288, 1312 (11th Cir. 2010).

Like any deliberate indifference claim, a plaintiff must satisfy both an objective and a subjective inquiry.  Chandler v. Crosby, 379 F.3d 1278, 1289–90 (11th Cir. 2004).  Under the objective component, a plaintiff must prove the condition he complains of is sufficiently serious to violate the Eighth Amendment.  Hudson v. McMillian, 503 U.S. 1, 8 (1992).  As for the subjective component, "the prisoner must prove that the prison official acted with 'deliberate

indifference.'" Miller v. King, 384 F.3d 1248, 1260–61 (11th Cir. 2004) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). To prove deliberate indifference, the prisoner must show that prison officials "'acted with a sufficiently culpable state of mind'" with regard to the serious prison condition at issue. Id. (quoting Chandler, 379 F.3d at 1289–90).

Prison officials are not held liable for every attack by one inmate upon another, Zatler v. Wainwright, 802 F.2d 397, 400 (11th Cir. 1986), nor are they guarantors of a prisoner's safety. Popham v. City of Talladega, 908 F.2d 1561, 1564 (11th Cir. 1990). Rather, a prison official must be faced with a known risk of injury that rises to the level of a "strong likelihood rather than a mere possibility" before his failure to protect an inmate can be said to constitute deliberate indifference. Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990).

Plaintiff has not made any allegation that the inmates that attacked him posed any risk to Plaintiff's safety prior to the November 28, 2014 incident or that Defendants were aware of any risk to Plaintiff's safety—from these inmates or any other source—prior to the attack. A review of Plaintiff's Complaint fails to reveal any allegation indicating that Defendants were subjectively aware of any objective risk to Plaintiff's safety prior to the attack.

Plaintiff alleges that he was attacked by other inmates on November 28, 2014, because Defendants failed to lock the doors leading to the dormitory area in which he worked and failed to secure inmates in their cells. (Doc. 1, pp. 5–6.) Plaintiff further alleges that, since his attack, Defendants have made no effort to properly secure the doors or keep inmates confined. (Id. at p. 6.) Plaintiff asserts throughout his Complaint that Defendants were, and continue to be, "negligent" in properly securing the area. (Id.) He contends that Defendants have not repaired the doors' faulty locking mechanisms since his attack and that, as a result, he now lives in constant fear of a future attack. (Id.)

These allegations of negligence fail to rise to the level of an Eighth Amendment violation. It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment[ ] Clause." McCoy v. Webster, 47 F.3d 404, 408 (11th Cir. 1995). Thus, to constitute cruel and unusual punishment, "conduct that does not purport to be punishment . . . must involve more than ordinary lack of due care for the prisoner's interests or safety." Whitley v. Albers, 475 U.S. 312, 319 (1986). In other words, "[m]erely negligent failure to protect an inmate from attack does not justify liability under [42 U.S.C.] § 1983." Stuckey v. Thompson, No. CV405-216, 2007 WL 1035134, at *5 (S.D. Ga. Mar. 29, 2007) (citing Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990)). Plaintiff has not presented facts sufficient to show that Defendants acted with more than gross negligence by failing to keep doors locked. See Patton v. Corr. Officer Rowell, No. 5:15-cv-25, 2015 WL 9916161, at *5 (S.D. Ga. Dec. 16, 2015) ("[W]hile Defendants' violations of standard operating procedures and failure to check to be certain that all cells were locked may constitute *negligence*, they do not support deliberate indifference claims under the Eighth Amendment.") (emphasis added).[3]

Consequently, the Court should **DISMISS** Plaintiff's Eight Amendment claims based on a theory of a failure to protect.

### C.     Deliberate Indifference Claim Based on Inadequate Medical Care

As stated above, the Eighth Amendment's proscription against cruel and unusual punishment imposes a constitutional duty upon a prison official to take reasonable measures to guarantee the safety of inmates. The cruel and unusual punishment standard of the Eighth

---

[3] Cf. Marsh v. Butler Cty., 268 F.3d 1014 (11th Cir. 2001) (en banc), *abrogated on other grounds by* Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).

Amendment requires prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care." Farmer, 511 U.S. at 832.

In the medical care context, the standard for cruel and unusual punishment, embodied in the principles expressed in Estelle v. Gamble, 429 U.S. 97, 104 (1976), is whether a prison official exhibits a deliberate indifference to the serious medical needs of an inmate. Farmer, 511 U.S. at 828. However, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Estelle, 429 U.S. at 105). Rather, "an inmate must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994).

In order to prove a deliberate indifference claim, a detainee must overcome three obstacles. The detainee must: 1) "satisfy the objective component by showing that [he] had a serious medical need"; 2) "satisfy the subjective component by showing that the prison official acted with deliberate indifference to [his] serious medical need"; and 3) "show that the injury was caused by the defendant's wrongful conduct." Goebert v. Lee Cty., 510 F.3d 1312, 1326 (11th Cir. 2007). A medical need is serious if it "'has been diagnosed by a physician as *mandating* treatment or [is] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Hill, 40 F.3d at 1187) (emphasis supplied). As for the subjective component, the Eleventh Circuit has consistently required that "a defendant know of and disregard an excessive risk to an inmate's health and safety." Haney v. City of Cumming, 69 F.3d 1098, 1102 (11th Cir. 1995). Under the subjective prong, an inmate "must prove three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." Goebert, 510 F.3d at 1327.

11

"The meaning of 'more than gross negligence' is not self-evident[.]" Id. In instances where a deliberate indifference claim turns on a delay in treatment rather than the type of medical care received, the factors considered are: "(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." Id. "When the claim turns on the quality of the treatment provided, there is no constitutional violation as long as the medical care provided to the inmate is 'minimally adequate.'" Blanchard v. White Cty. Det. Ctr. Staff, 262 F. App'x 959, 964 (11th Cir. 2008) (quoting Harris, 941 F.2d at 1504). "Deliberate indifference is not established where an inmate received care but desired different modes of treatment." Id.

Plaintiff does not allege that Defendants disregarded his medical needs. Rather, he disagrees with the mode and extent of treatment he received. Plaintiff states that he "did not receive the proper treatment" because he needed stitches, but was only given medical glue. He also contends that he should have received more extensive treatment because "only two (2) of his wounds [were] attended to." (Doc. 1, p. 5.) However, this amounts to, at most, an allegation of negligence, not deliberate indifference. Thus, Plaintiff has not alleged sufficient facts to state a cognizable Eighth Amendment claim for denial of medical care, and the Court should **DISMISS** those claims.

## IV.    Retaliation

"It is an established principle of constitutional law that an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement." O'Bryant v. Finch, 637 F.3d 1207, 1212 (11th Cir. 2011). It is also established that an inmate may maintain a cause of action against prison administrators who retaliate against him for making such complaints. Id. (quoting

Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008) (internal citation and punctuation omitted)). "To establish a First Amendment retaliation claim, a prisoner need not allege the violation of an additional separate and distinct constitutional right; instead, the core of the claim is that the prisoner is being retaliated against for exercising his right to free speech." O'Bryant, 637 F.3d at 1212. "To prevail, the inmate must establish these elements: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." Smith, 532 F.3d at 1276 (citing Bennett v. Hendrix, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005)).

Here, Plaintiff's filing of grievances regarding his attack is constitutionally protected speech. Additionally, Plaintiff arguably asserts that a prisoner of "ordinary firmness" may have been deterred from exercising his First Amendment rights based on Defendants Bobbit and Smith's actions. Bennett, 423 F.3d at 1252 (noting "adverse effect" depends on the context of the alleged action and focuses on "the status of the speaker, the status of the retaliator, the relationship between the speaker and the retaliator, and the nature of the retaliatory acts[ ]") (citing Thaddeus–X v. Blatter, 175 F.3d 378, 398 (6th Cir. 1999)). Plaintiff alleges that he was placed in Tier II administrative confinement and that Defendants Bobbit and Smith confiscated his personal property as a result of his decision to file a grievance. (Doc. 1, p. 5.) Thus, Plaintiff has stated facts which plausibly allege First Amendment retaliation claims against Defendants Bobbit and Smith, and those claims remain pending.

## V.     Plaintiff's Request for Preliminary Injunctive Relief

Plaintiff has sought preliminary injunctive relief from the Court in the form of a transfer to another prison.  (Doc. 1, p. 13.)  To be entitled to a preliminary injunction or a temporary restraining order, the movant must show: (1) a substantial likelihood of ultimate success on the merits; (2) an injunction or protective order is necessary to prevent irreparable injury; (3) the threatened injury outweighs the harm the injunction or protective order would inflict on the non-movant; and (4) the injunction or protective order would not be adverse to the public interest.  Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225–26 (11th Cir. 2005).  In this Circuit, an "injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion' as to the four requisites."  Horton v. City of Augustine, Fla., 272 F.3d 1318, 1326 (11th Cir. 2001).

If a plaintiff succeeds in making such a showing, then "the court may grant injunctive relief, but the relief must be no broader than necessary to remedy the constitutional violation." Newman v. Ala., 683 F.2d 1312, 1319 (11th Cir. 1982).  Accordingly, where there is a constitutional violation in the prison context, courts traditionally are reluctant to interfere with prison administration and discipline, unless there is a clear abuse of discretion.  See Procunier v. Martinez, 416 U.S. 396, 404–05 (1974) ("Traditionally, federal courts have adopted a broad hands-off attitude toward problems of prison administration [because] . . . courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform."), *overruled on other grounds by* Thornburgh v. Abbott, 490 U.S. 401 (1989).  In such cases, "[d]eference to prison authorities is especially appropriate."  Newman, 683 F.2d at 1320–21 (reversing district court's injunction requiring release of prisoners on probation because it "involved the court in

the operation of the State's system of criminal justice to a greater extent than necessary" and less intrusive equitable remedy was available).

Plaintiff has not shown that he has satisfied the prerequisites in order to be entitled to a preliminary injunction. Specifically, Plaintiff has not shown the likelihood of success on the merits of his claims. This is not to say that Plaintiff will not be able to ultimately obtain some form of injunctive relief in this case. However, he has not made the requisite showing at this time to obtain the extraordinary relief he currently seeks. Therefore, the Court should **DENY** his request for a preliminary injunction.

## CONCLUSION

For the reasons laid out above, I **RECOMMEND** that the Court **DISMISS** Plaintiff's official capacity, supervisory liability, and Eighth Amendment claims. I also **RECOMMEND** that the Court **DISMISS** Plaintiff's claims against Defendants Toole, Chambers, and Maryin and **DENY** Plaintiff's requests for preliminary injunctive relief.

Any party seeking to object to this Report and Recommendation is **ORDERED** to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence. Furthermore, it is not necessary for a party to repeat legal arguments in objections.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report to which objection are made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon Plaintiff.

## REMAINING CLAIMS AND DEFENDANTS

Plaintiff's allegations, when read in a light most favorable to him, arguably state colorable claims for relief against Defendants Smith and Bobbitt for violations of his First Amendment rights. Consequently, a copy of this Order and Plaintiff's Complaint shall be served upon Defendants Smith and Bobbit by the United States Marshal without prepayment of costs. The Court also provides the following instructions to the parties regarding the remaining claims and Defendants that will apply to the remainder of this action and which the Court urges the parties to read and follow.

## <u>INSTRUCTIONS TO DEFENDANTS</u>

Because Plaintiff is proceeding *in forma pauperis,* the undersigned directs that service be effected by the United States Marshal. Fed. R. Civ. P. 4(c)(3). In most cases, the marshal will first mail a copy of the complaint to the Defendant by first-class mail and request that the Defendant waive formal service of summons. Fed. R. Civ. P. 4(d); Local Rule 4.7. Individual and corporate defendants have a duty to avoid unnecessary costs of serving the summons, and

any such defendant who fails to comply with the request for waiver must bear the costs of personal service unless good cause can be shown for the failure to return the waiver. Fed. R. Civ. P. 4(d)(2). Generally, a defendant who timely returns the waiver is not required to answer the complaint until sixty (60) days after the date that the marshal sent the request for waiver. Fed. R. Civ. P. 4(d)(3).

**IT IS FURTHER ORDERED** that Defendants are hereby granted leave of court to take the deposition of the Plaintiff upon oral examination. Fed. R. Civ. P. 30(a). Defendants are further advised that the Court's standard 140 day discovery period will commence upon the filing of the last answer. Local Rule 26.1. Defendants shall ensure that all discovery, including the Plaintiff's deposition and any other depositions in the case, is completed <u>within that discovery period</u>.

In the event that Defendants take the deposition of any other person, Defendants are ordered to comply with the requirements of Federal Rule of Civil Procedure 30. As the Plaintiff will likely not be in attendance for such a deposition, Defendants shall notify Plaintiff of the deposition and advise him that he may serve on Defendants, in a sealed envelope, within ten (10) days of the notice of deposition, written questions the Plaintiff wishes to propound to the witness, if any. Defendants shall present such questions to the witness seriatim during the deposition. Fed. R. Civ. P. 30(c).

## INSTRUCTIONS TO PLAINTIFF

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants or, if appearance has been entered by counsel, upon their attorneys, a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date on which a true and correct copy of any document was mailed to Defendants or their counsel. Fed. R. Civ. P. 5. "Every pleading shall contain a caption setting forth the name of the court, the title of the action, [and] the file number." Fed. R. Civ. P. 10(a).

Plaintiff is charged with the responsibility of immediately informing this Court and defense counsel of any change of address during the pendency of this action. Local Rule 11.1. Failure to do so may result in dismissal of this case.

Plaintiff has the responsibility for pursuing this case. For example, if Plaintiff wishes to obtain facts and information about the case from Defendants, Plaintiff must initiate discovery. See generally, Fed. R. Civ. P. 26, *et seq.* The discovery period in this case will expire 140 days after the filing of the last answer. Local Rule 26.1. Plaintiff does not need the permission of the Court to begin discovery, and Plaintiff should begin discovery promptly and complete it within this time period. Local Rule 26.1. Discovery materials should **not** be filed routinely with the Clerk of Court; exceptions include: when the Court directs filing; when a party needs such materials in connection with a motion or response, and then only to the extent necessary; and when needed for use at trial. Local Rule 26.4.

Interrogatories are a practical method of discovery for incarcerated persons. See Fed. R. Civ. P. 33. Interrogatories may be served only on a party to the litigation, and, for the purposes of the instant case, this means that interrogatories should not be directed to persons or

organizations who are not <u>named</u> as Defendants. Interrogatories are not to contain more than twenty-five (25) questions. Fed. R. Civ. P. 33(a). If Plaintiff wishes to propound more than twenty-five (25) interrogatories to a party, Plaintiff must have permission of the Court. If Plaintiff wishes to file a motion to compel, pursuant to Federal Rule of Civil Procedure 37, he should first contact the attorneys for Defendants and try to work out the problem; if Plaintiff proceeds with the motion to compel, he should also file a statement certifying that he has contacted opposing counsel in a good faith effort to resolve any dispute about discovery. Fed. R. Civ. P. 26(c); 37(a)(2)(A); Local Rule 26.7.

Plaintiff has the responsibility for maintaining his own records of the case. If Plaintiff loses papers and needs new copies, he may obtain them from the Clerk of Court at the standard cost of fifty cents ($.50) per page. **If Plaintiff seeks copies, he should request them directly from the Clerk of Court and is advised that the Court will authorize and require the collection of fees from his prison trust fund account to pay the cost of the copies at the aforementioned rate of fifty cents ($.50) per page.**

If Plaintiff does not press his case forward, the Court may dismiss it for want of prosecution. Fed. R. Civ. P. 41; Local Rule 41.1.

It is Plaintiff's duty to cooperate fully in any discovery which may be initiated by Defendants. Upon no less than five (5) days' notice of the scheduled deposition date, the Plaintiff shall appear and permit his deposition to be taken and shall answer, under oath or solemn affirmation, any question which seeks information relevant to the subject matter of the pending action. Failing to answer questions at the deposition or giving evasive or incomplete responses to questions will not be tolerated and may subject Plaintiff to severe sanctions, <u>including dismissal of this case</u>.

As the case progresses, Plaintiff may receive a notice addressed to "counsel of record" directing the parties to prepare and submit a Joint Status Report and a Proposed Pretrial Order. A plaintiff proceeding without counsel may prepare and file a unilateral Status Report and is <u>required</u> to prepare and file his own version of the Proposed Pretrial Order. A plaintiff who is incarcerated shall not be required or entitled to attend any status or pretrial conference which may be scheduled by the Court.

<h3 style="text-align:center"><u>ADDITIONAL INSTRUCTIONS TO PLAINTIFF REGARDING<br>MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT</u></h3>

Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve his response to the motion within fourteen (14) days of its service. "Failure to respond shall indicate that there is no opposition to a motion." Local Rule 7.5. Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that he does not oppose the Defendants' motion. Plaintiff's case may be dismissed for lack of prosecution if Plaintiff fails to respond to a motion to dismiss.

Plaintiff's response to a motion for summary judgment must be filed within twenty-one (21) days after service of the motion. Local Rules 7.5, 56.1. The failure to respond to such a motion shall indicate that there is no opposition to the motion. Furthermore, each material fact set forth in the Defendants' statement of material facts will be deemed admitted unless specifically controverted by an opposition statement. Should Defendants file a motion for summary judgment, Plaintiff is advised that he will have the burden of establishing the existence of a genuine dispute as to any material fact in this case. That burden cannot be carried by reliance on the conclusory allegations contained within the complaint. Should the Defendants' motion for summary judgment be supported by affidavit, Plaintiff must file counter-affidavits if he desires to contest the Defendants' statement of the facts. Should Plaintiff fail to file opposing

affidavits setting forth specific facts showing that there is a genuine dispute for trial, any factual assertions made in Defendants' affidavits will be accepted as true and summary judgment may be entered against the Plaintiff pursuant to Federal Rule of Civil Procedure 56.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 12th day of April, 2016.

_____
R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA